IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONAGRA FOODS FOOD INGREDIENTS
COMPANY, INC.,

    *Plaintiff,*

vs.

ARCHER-DANIELS-MIDLAND
COMPANY,

    *Defendant.*

Case No. 12-cv-2171-EFM-KGS

**MEMORANDUM AND ORDER**

Plaintiff ConAgra Foods Food Ingredients Company, Inc. ("ConAgra") filed this suit alleging that Defendant Archer-Daniels-Midland Company ("ADM") is infringing its '172, '360 and '298 Patents. In its Answer, ADM brings seven counterclaims against ConAgra, including one for "Declaratory Judgment of Unenforceability of the '172 Patent and All Patents Claiming Priority to the '172 Patent, Including the '360 Patent and the '298 Patent." ADM contends that ConAgra's '172, '360 and '298 Patents are unenforceable under a theory of inequitable conduct before the United States Patent and Trademark Office ("PTO"). ConAgra now moves to dismiss this counterclaim on the basis that it does not state a claim for relief. For the reasons set forth below, the Court grants ConAgra's motion to dismiss.

# BACKGROUND

ConAgra and ADM are competing manufacturers in the field of agriculture that sell wheat flour to customers who use the flour to manufacture products sold to consumers. ConAgra filed this lawsuit on March 21, 2012, alleging that ADM is infringing its U.S. Patent No. 8,017,172 (the " '172 Patent"). At the time ConAgra filed its Complaint, it was also prosecuting two continuation applications to the '172 Patent before the PTO. The first continuation application issued as U.S. Patent No. 8,252,360 (the " '360 Patent") on August 28, 2012. Two days later, ConAgra filed a First Amended Complaint adding a claim for infringement of the '360 Patent. On March 26, 2013, the PTO issued the second continuation application as U.S. Patent No. 8,404,298 (the " '298 Patent"). ConAgra filed its Second Amended Complaint on April 10, 2013, asserting infringement of all three patents, *i.e.*, the '172, '360, and '298 Patents.

In its Answer to ConAgra's Second Amended Complaint, ADM asserts seven affirmative defenses and brings seven counterclaims against ConAgra. ADM's seventh counterclaim seeks a declaratory judgment that the '172 Patent, and all patents claiming priority to the '172 Patent, including the '360 and '298 Patents, are unenforceable due to inequitable conduct before the PTO. ADM generally asserts that during the prosecution of the '172 Patent's application, ConAgra failed to inform the PTO of material information and prior art that were known to at least the '172 Patent's co-inventor, Elizabeth Arndt, and were withheld from the PTO with the intent to deceive the PTO into granting the '172 Patent and its progeny.

Specifically, ADM asserts that during the prosecution of the '172 Patent, the PTO rejected claims that ultimately issued as claims 1 and 35 of the '172 Patent on the basis that they were unpatentable in light of a Canadian patent application owned by ConAgra (hereafter

referred to as "Chigurupati I").[1]  Chigurupati I disclosed a whole wheat flour wherein 100% of the flour particles were smaller than 150 micrometers.  ADM alleges that to overcome the PTO's rejections, the inventors of the '172 Patent submitted declarations stating that the flour disclosed in Chigurupati I would not qualify as a whole wheat flour under federal regulations to persons of skill in the art.

ADM further alleges that Arndt was aware of two articles, one published by Kay Behall et al. and one published by Judith Hallfrisch et al. (the "Behall and Hallfrisch articles"), that disclose a whole wheat flour wherein 100% of its particles were smaller than 150 micrometers and that the flour disclosed in these articles was considered a whole wheat flour by persons of skill in the art.  According to ADM, Arndt did not disclose these articles to the PTO and misrepresented the existence of a whole wheat flour where in 100% of its particles were smaller than 150 micrometers to the PTO during the prosecution of the '172, '360, and '298 Patents.  ADM alleges that the whole wheat flour disclosed in the Behall and Hallfrisch articles is material to the patentability of the '172, '360, and '298 Patents and invalidates at least one of the asserted claims of those patents.

ConAgra now moves to dismiss ADM's inequitable conduct counterclaim on the basis that it does not state a claim for relief.  ConAgra contends that ADM's counterclaim does not satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) required for an inequitable conduct claim.

**LEGAL STANDARD**

---

[1] ADM's counterclaim identifies the Canadian patent application as "CA 2,141,974 to Chigurupati et al." and also refers to the patent application as "Chigurupati I."  ADM's Answer to Second Amended Complaint, Doc. 79, pp.11-12.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[2] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[3] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[4]

Because inequitable conduct sounds in fraud, to survive a motion to dismiss, the accused infringer must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).[5] Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[6] Therefore, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."[7]

Whether an accused infringer has satisfied the heightened pleading standard of Rule 9(b) in pleading inequitable conduct is governed by Federal Circuit law because it bears on an issue

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[5] *Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).

[6] Fed. R. Civ. P. 9(b).

[7] *Exergen*, 575 F.3d at 1326-27.

unique to patent law.[8] The Federal Circuit has held that to plead inequitable conduct, the accused infringer must allege that: (1) "the applicant misrepresented or omitted material information" (2) "with the specific intent to deceive the PTO."[9] To satisfy the heightened pleading requirement of Rule 9(b), the accused infringer must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."[10] " '[K]nowledge' and 'intent' may be averred generally."[11] However, "a pleading of inequitable conduct under rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."[12]

## ANALYSIS

ConAgra seeks to dismiss ADM's inequitable conduct counterclaim on two bases. First, ConAgra argues that the counterclaim does not satisfy the "who," "what," "why,"[13] and "how" elements of pleading an inequitable conduct counterclaim under Rule 9(b). Second, ConAgra

---

[8] *Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C*., 482 F.3d 1247, 1356 (Fed. Cir. 2007).

[9] *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).

[10] *Exergen*, 575 F.3d at 1327.

[11] *Id*. at 1328-29 (quoting Fed. R. Civ. P. 9(b)).

[12] *Id*.; *see also Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) ("A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO.").

[13] In *Exergen*, the Federal Circuit initially states that Rule 9(b) requires the pleading to state the "who, what, when, where, and how" of the alleged fraud. 575 F.3d at 1327. However, later in the decision, the court expands this to require allegations that "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id*. at 1329.

asserts that the counterclaim does not plead sufficient facts to infer that any alleged misconduct was performed with the specific intent to deceive the PTO. As explained below, the Court finds that ADM's counterclaim fails to sufficiently plead the "what" and "how" elements of an inequitable conduct claim and fails to plead sufficient facts alleging an intent to deceive.

### A.     The Circumstances of Inequitable Conduct

#### 1.     The "Who"

In its counterclaim, ADM alleges that "ConAgra, including Arndt, was aware of at least two peer reviewed prior art references disclosing a 'fine ground whole wheat flour' produced by ConAgra in approximately 1999 wherein 100% of the flour's particles were smaller than 150 micrometers . . . ."[14] ADM alleges that "[u]pon information and belief, notwithstanding ConAgra's knowledge – at least the knowledge of its agent, Arndt – both the 1999 disclosures of an ultrafine whole wheat flour wherein 100% of the particles were smaller than 150 micrometers and its materiality to the patentability of the '172 Patent application and its progeny, ConAgra – including Arndt – did not disclose the Behall or Hallfrisch articles to the Patent Office during the prosecution of the '172 Patent, the '360 Patent or the '298 Patent and made misrepresentations regarding the existence of such a flour to the Patent Office."[15] ConAgra asserts that these allegations do not meet the "who" element of pleading an inequitable conduct claim under Rule 9(b). The Court disagrees.

In *Exergen*, the Federal Circuit instructed that the pleading must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the

---

[14]   Answer to Second Amended Complaint, Doc. 94, p. 13.

[15]   *Id.* at 15.

material information and deliberately withheld or misrepresented it."[16] The court found that the mere identification of a corporate party or simply referring to a corporate party's "agents and/or attorneys" is not sufficient to satisfy the "who" requirement under Rule 9(b).[17] Here, although ADM's counterclaim refers to ConAgra, it also specifically names Arndt as the individual who was aware of the whole wheat flour disclosed in the Behall and Hallfrisch articles and who deliberately withheld or misrepresented this information before the PTO. The Court finds that this is sufficient to meet the "who" element of pleading an inequitable conduct claim. The Court notes, however, that ADM's counterclaim is deficient to the extent it references unnamed individuals through the use of the words or phrases "ConAgra, including its agents and/or attorneys and/or others owing a duty of candor to the United States Patent and Trademark Office," "ConAgra," and "ConAgra's attorneys."[18]

## 2. The "What"

To plead the "what" of an inequitable conduct claim, an accused infringer must "identify which claims, and which limitations in those claims the withheld references are relevant to."[19] ADM argues that it meets this requirement through the following allegations in paragraph 42 of its counterclaim: "[d]uring the prosecution of the '172 patent application, the Patent Office repeatedly rejected claims that ultimately issued as claims 1 and 35 of the '172 patent, concerning a whole wheat flour wherein at least 98% of particles were smaller than 212

---

[16] *Exergen*, 575 F.3d at 1329.

[17] *Id.* at 1329.

[18] *See Zvelo, Inc. v. SonicWall, Inc.*, 2013 WL 5443858, at *3 (D. Colo. Sept. 30, 2013) (stating that specificity as to two individuals does not give the accused infringer the license to use the vague phrase "and/or other [sic] substantively involved in preparation and original examination of the application" in its pleading).

[19] *Exergen*, 575 F.3d at 1329.

micrometers."[20] ConAgra asserts that this allegation is insufficient because it merely describes the prosecution history of the '172 Patent and does not allege that any particular prior art had a direct bearing on any specific patent claims being issued.

ConAgra's reading of ADM's counterclaim is unduly narrow. With respect to the '172 Patent, paragraph 42 sufficiently identifies claims 1 and 35 as the claims that the Behall and Hallfrisch articles allegedly invalidate. However, the Court still finds that ADM has failed to meet the "what" element in pleading its inequitable conduct claim. ADM does not identify which limitations with claims 1 and 35 that the articles are relevant to. The phrase "concerning a whole wheat flour wherein at least 98% of particles were smaller than 212 micrometers"[21] in paragraph 42 appears to generally describe claims 1 and 35. Furthermore, claim 35 does not claim a whole wheat flour, but instead a coarse fraction wherein 97% of the particles are less than 212 micrometers. With respect to the '360 and '298 Patents, the counterclaim is completely deficient. ADM has not identified a single claim or limitation within these patents that the Behall and Hallfrisch articles invalidate.[22] Therefore, the Court finds that ADM's counterclaim does not sufficiently plead the "what" element of an inequitable conduct claim.

### 3. The "Why" and "How"

An inequitable conduct claim must plead the "particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record," because such

---

[20] Answer to Second Amended Complaint, Doc. 79, p. 15.

[21] *Id*.

[22] To the extent ADM's counterclaim is unclear regarding its assertion that all three patents in suit are unenforceable due to inequitable conduct, ADM has submitted a Second Amended Counterclaim as an exhibit to its Opposition to ConAgra's Motion to Dismiss ADM's Inequitable Conduct Counterclaim. The Court disregards this attachment, as ADM has not moved to amend its Answer to Second Amended Complaint, and an attachment to a motion is not a sufficient filing per Fed. R. Civ. P. 15(a) or D. Kan. Rule 15.1.

allegations are necessary "to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims."[23] ConAgra contends that ADM has not shown "why" the Behall or Hallfrisch articles are material and non-cumulative or "how" an examiner would have used these articles in invalidating the '172, '360, and '298 Patents' claims.

The parties first dispute the standard under which ADM must plead materiality. ADM argues that the correct standard for materiality is set forth in 37 C.F.R. § 1.56, which states:

> information is material to patentability when it is not cumulative to information already of record . . ., and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability.[24]

The Federal Circuit, however, rejected this standard in *Therasense*, when it held that to prove materiality, an accused infringer must show "but-for" materiality. Specifically, the Federal Circuit stated that "the materiality required to establish inequitable conduct is but-for materiality. When an application fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."[25] Thus, following *Therasense*, the appropriate standard for pleading materiality is "but-for" materiality.[26]

---

[23] *Exergen*, 575 F.3d at 1329-30.

[24] 37 C.F.R. § 1.56.

[25] *Therasense*, 649 F.3d at 1291.

[26] *See SAP Am., Inc., v. Purple Leaf, LLC*, 2012 WL 2237995, at *6 (N.D. Cal. June 15, 2012) ("Under *Twombly/Iqbal*, it is not enough to simply allege – as a legal conclusion – that the information was material – rather, there must be facts alleged supporting that element. And, following *Therasense*, the type of materiality that supports the claim is but-for materiality."); *Aevoe Corp. v. AE Tech. Co., Ltd.*, 2013 WL 876036, at *7 (D. Nev. Mar. 7,

Applying this standard, the Court finds that ADM has sufficiently plead why the Behall and Hallfrisch articles are material to patentability. ADM's counterclaim alleges that during prosecution, the PTO examiner rejected claims 1 and 35 of the '172 Patent on the basis that prior art disclosed a whole wheat flour wherein 100% of the flour particles were smaller than 150 micrometers. It also alleges that the PTO only allowed these claims to issue after Dr. Arndt submitted a declaration stating that such flour was not considered a whole wheat flour to persons of ordinary skill in the art. The counterclaim further alleges that the Behall and Hallfrisch articles disclose "a fine ground whole wheat flour"[27] produced by ConAgra wherein 100% of the flour's particles were less than 150 micrometers. Finally, the counterclaim alleges that the flour disclosed in the Behall and Hallfrisch articles invalidate at least one of the asserted claims of the '172, '360, and '298 Patents. Taken as a whole, these allegations plead but-for materiality.

The Court also finds that ADM has sufficiently plead why the Behall and Hallfrisch articles are not cumulative. The Federal Circuit has held that "[i]t is well-established . . . that information is not material if it is cumulative of other information already disclosed to the PTO."[28] Here, ADM's counterclaim alleges that "the Behall or Hallfrisch articles were not otherwise before the patent examiner during the prosecution of the '172 patent, the '360 patent or the '298 patent." Therefore, ADM's counterclaim adequately pleads "why" the Behall and Hallfrisch articles are material and not cumulative.

---

2013) (applying the "but-for" materiality standard when determining whether an inequitable conduct claim was sufficiently plead under Rule 9(b)); *ZAGG Intellectual Prop. Holding Co. v. XO Skins, LLC*, 2012 WL 896352, at *4 (D. Utah, March 15, 2012) (applying the "but-for" materiality standard when determining whether an inequitable conduct claim was sufficiently plead under Rule 9(b)).

[27] Answer to Second Amended Complaint, Doc. 79, p. 13.

[28] *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008) (citing *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007)).

ADM, has not, however, adequately plead "how" an examiner would have used the Behall and Hallfrisch articles in assessing the patentability of the claims. ADM asserts that had the PTO examiner known of the flour disclosed in the Behall and Hallfrisch articles, it would have "maintained its rejections of Claims 1 and 35 of the '172 Patent." In support of this assertion, ADM relies on allegations in its counterclaim stating that (1) claims 1 and 35 of the '172 Patent were rejected on the basis that prior art disclosed a whole wheat flour wherein 100% of the flour particles were smaller than 150 micrometers; (2) prior art disclosing a whole wheat flour wherein 100% of the particles were small than 150 micrometers was thus highly material to the patentability of the '172 Patent; and (3) the Behall and Hallfrisch articles and the whole wheat flour disclosed in those articles invalidates at least one of the asserted claims of the '172, '360, and '298 Patents. Although ADM alleges that the Behall and Hallfrisch articles invalidate at least one of the claims of the '172, '360, and '298 Patents, it does not identify the specific basis on which the examiner would have rejected these claims. This specificity is required when pleading an inequitable conduct claim.[29] Therefore, the Court finds that ADM has not plead the "how" element of an inequitable conduct claim as required by Rule 9(b).

**B.     Scienter**

ConAgra asserts that ADM's counterclaim does not contain sufficient facts alleging deceptive intent. In *Exergen*, the Federal Circuit held that an accused infringer must plead that "*a specific individual* (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific

---

[29]  *Aevoe*, 2013 WL at *8 n. 3 ("To satisfy *Exergen*, the pleading, itself, must specifically identify the basis on which the examiner would have rejected the claims.").

intent to deceive the PTO."[30] Here, although ADM's counterclaim identifies Arndt as the individual who withheld and/or misrepresented information, it does not identify a specific individual who acted with the intent to deceive the PTO. Indeed, paragraph 58 of ADM's counterclaim states that "the failure to disclose the aforesaid information to the Patent Office *on the part of ConAgra* was with the intent to deceive the Patent Office into granting the '172 Patent and its progeny."[31] Alleging ConAgra's intent to deceive is not the same as alleging a specific individual's intent to deceive. Therefore, ADM's counterclaim does not contain sufficient facts to meet Rule 9(b)'s requirements for pleading scienter in an inequitable conduct claim.

Even if ADM had named a specific individual, the counterclaim does not provide sufficient grounds to infer scienter. ADM argues that it has plead specific intent to deceive the PTO because it alleges that Arndt knew of the Behall and Hallfrisch articles and that the flour disclosed in those articles was considered a whole wheat flour by persons with skill in the art. But, as *Exergen* notes, an intent to deceive may not be inferred solely from some level of knowledge of a prior art reference.[32] ADM's counterclaim also alleges that Arndt's understanding of the flour disclosed in the Behall and Hallfrisch articles as a whole wheat flour contradicts her prior representation to the PTO that the Chigurupati I flour would not be considered a whole wheat flour by one of ordinary skill in the art. An alleged contradiction, however, does not support an inference of specific intent to deceive.[33] Thus, ADM's

---

[30] *Exergen*, 575 F.3d at 1328-29 (emphasis added).

[31] Answer to Second Amended Complaint, Doc. 79, p. 17 (emphasis added).

[32] *Exergen*, 575 F.3d at 1331.

[33] *Everlight Elec. Co., Ltd. v. Nichia Corp.*, 2012 WL 5389696, at *9 (E.D. Mich. Nov. 2, 2012) (citations omitted).

counterclaim does not contain sufficient facts to infer that a particular individual acted with the specific intent to deceive the PTO.

For this reason, and all of the other reasons discussed above, ADM's counterclaim must be dismissed.

**IT IS ACCORDINGLY ORDERED** this 3rd day of January, 2014, that Plaintiff ConAgra Foods Food Ingredients Company, Inc.'s Motion to Dismiss Defendant Archer-Daniel-Midland Co.'s Inequitable Conduct Counterclaim (Doc. 83) is hereby **GRANTED**.

**IT IS SO ORDERED**.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE