**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ARDENT MILLS, LLC,

Plaintiff,

v.

ARCHER-DANIELS-MIDLAND COMPANY,

Defendant.

Case No. 12-2171-EFM

## MEMORANDUM AND ORDER

This matter comes before the court upon Plaintiff Ardent Mills' Motion to Compel Discovery (ECF No. 184).[1] Ardent Mills seeks an order compelling Defendant Archer-Daniels-Midland Company (ADM) to fully respond to its discovery requests seeking certain samples and permission to enter ADM's Enid, Oklahoma and Buffalo, New York plants so that Ardent Mills may inspect, observe, and photograph the collection of samples. ADM opposes the motion on the grounds that the discovery is not relevant to this case and is unduly burdensome. Specifically, ADM contends that Ardent Mills has maintained throughout this litigation that ADM's whole wheat flour end product infringed on the patents-in-suit, not that ADM's product stream infringes on the patents-in-suit. ADM contends the latter theory is not a theory in this case, and because of this, discovery aimed at that theory is not relevant. Alternatively, ADM contends Ardent Mills should be judicially estopped from pursuing this theory given Ardent Mills' prior statements to the court. Finally, ADM contends that allowing an inspection of its facilities would be unduly burdensome and costly.

[1] ConAgra Foods Food Ingredients Company, Inc. originally filed this patent infringement action. Current Plaintiff Ardent Mills, LLC was subsequently formed and substituted as the party plaintiff in this case. *See* Order, ECF No. 175). Some of the events described herein occurred while ConAgra was plaintiff, and some occurred when Ardent Mills was the party plaintiff. For clarity, the court will refer to both entities as Ardent Mills.

As explained in greater detail below, Ardent Mills' Third Amended Complaint is drafted broadly enough to encompass infringement by intermediate products created in ADM's product stream, and therefore, discovery on this matter is relevant to the claims or defenses currently in this case. Ardent Mills has never filed an amended pleading that would make clear it was abandoning this theory, and the district judge has never ruled that Ardent Mills was barred from pursing this theory. While the court recognizes that Ardent Mills has made statements to the district judge indicating that it was only pursuing a theory of infringement by end products, in ruling on a motion to compel, it is not the magistrate judge's role to decide whether a party should be judicially estopped from pursuing a theory encompassed by the plain language of the pleadings. That said, the court finds ADM has adequately supported its objection that allowing inspection of its facilities would be unduly burdensome and costly. For these reasons, Ardent Mills' motion to compel is granted in part and denied in part. The court also grants ADM's motion for leave to file a surreply because Ardent Mills' reply brief raised new issues.[2]

## I. Relevant Background

Ardent Mills is the owner by assignment of rights, title, and interest to United States Patent Nos. 8,017,172; 8,252,360; and 8,404,298 (the patents-in-suit). These patents generally claim a whole wheat flour product with characteristics of white flour. In its Third Amended Complaint, Ardent Mills alleges that "ADM's white whole wheat products, including but not limited to Kansas Diamond White Whole Wheat Flour, embody, use, and incorporate the inventions claimed in the '172, '360, and '298 patents . . . ."[3] Ardent Mills further alleges that ADM has been and currently is infringing on the patents-in-suit by "making, using, selling,

---

[2] *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) (stating that the court may grant leave to file a surreply when new arguments or evidence are raised in the reply brief).

[3] Third Am. Compl. at ¶ 22, ECF No. 176.

and/or offering for sale, white whole wheat products, including Kansas Diamond White Whole Wheat Flour . . . ."[4]

In its opening interrogatories, ADM requested Ardent Mills to identify the products it alleged infringed on its patents. Ardent Mills failed to include intermediate products in its initial response or in two subsequent supplementations.[5] However, on July 7, 2014, Ardent Mills served its third supplemental responses, which list intermediate products as accused products in this litigation.[6] Prior to its supplementation, ADM contends Ardent Mills made statements to the court indicating that this litigation involved only end products. For example, Ardent Mills' opening claim construction brief states,

> [The inventors] sought to develop a white flour with nutrition of a wheat flour. After years of experimentation and research, these efforts successfully resulted in a series of patents issued by the USPTO. Some of the issued patents disclose a *process* for making flour, others disclose a flour *product*. For purposes of clarity, the asserted patents in this litigation deal with the end flour *product*. Any processing aspects are wholly irrelevant to the asserted patents in this litigation.[7]

Similarly, during the claim construction hearing before the district judge, Ardent Mills' counsel stated,

> This case is purely about the end product. You should be able to determine infringement by looking at a product. If you import processing steps into this claim, one in the field, a competitor, could not determine infringement by looking at a product. They

[4] *Id.* at ¶ ¶ 30, 35; *see also id.* at ¶ 25 (setting forth substantially similar allegations).

[5] *See* ConAgra Foods Food Ingredients Company, Inc.'s Resps. to Def.'s First Set of Interrogs. to Pl., ECF No. 187-3; ConAgra Foods Food Ingredients Company, Inc.'s First Supp. Resps. to Def.'s First Set of Interrogs. to Pl., ECF No. 187-4; ConAgra Foods Food Ingredients Company, Inc.'s Second Supp. Resps. to Def.'s First Set of Interrogs. to Pl., ECF No. 187-5.

[6] *See* ConAgra Foods Food Ingredients Company, Inc.'s Third Supp. Resps. to Def.'s First Set of Interrogs. to Pl., ECF No. 187-6.

[7] Pl.'s Opening *Markman* Br. at 10, ECF No. 55 (emphasis included in original).

> would have to go investigate the process too. That's why you can never mix these two together. It's a matter of proof. It's also a matter of public notice. The product claim, you should be able to look at the product, examine the product, and determine if there's infringement, which is what we proposed here.[8]

On July 7, 2014, the same day Ardent Mills served its Third Supplemental Interrogatory Responses, Ardent Mills also served its Fourth Request for Production of Documents and Things.[9] Request No. 54 seeks various five-pound samples of certain product streams located at different ADM plant locations.[10] Request No. 55 seeks a ten-pound sample of clean dried wheat kernels used to produce each sample requested in Request No. 54.[11] And Request No. 56 asks ADM to permit Ardent Mills to enter the Enid, Oklahoma and Buffalo, New York plants so that Ardent Mills "may inspect, observe, and photograph the collection of the samples requested in Request Nos. 54 and 55."[12]

## II. Discussion[13]

### A. Relevance Objection

When resolving a motion to compel, the court is guided by the following principles. Fed. R. Civ. P. 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to

---

[8] *Markman* Hr'g Tr. at 20:7-16, ECF No. 187-2.

[9] Pl. ConAgra Foods Food Ingredients Co., Inc.'s Fourth Req. for Produc. of Docs. and Things (Nos. 54-56) to Def. Archer-Daniels Midland Co., ECF No. 185-1.

[10] *Id.* at 4-5.

[11] *Id.* at 6.

[12] *Id.*

[13] In its reply brief, Ardent Mills argues that ADM has waived its objections because it previously produced samples from within its process stream, and therefore, ADM should be precluded from now arguing that the discovery requests at issue seek irrelevant information or are unduly burdensome. This position is without merit. A party waives objections to discovery requests by failing to timely assert them in response to the discovery requests. *Sonnino v. University of Kan. Hosp. Authority*, 220 F.R.D. 633, 642 (D. Kan. 2004). The fact that ADM previously complied with separate discovery requests does not rob it of the opportunity to support timely raised objections in response to Ardent Mills' motion to compel.

any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." For good cause, the court may also order discovery of any matter relevant to the subject matter involved in the action.[14] Relevance is broadly construed at the discovery stage and a "request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[15]

There is no presumption in the Federal Rules of Civil Procedure that a discovery request seeks relevant information.[16] Relevance, however, is often apparent on the face of the request.[17] However, when relevance is not apparent on the face of the request, the proponent of the discovery, at the outset, must show the relevance of the requested information.[18] When a discovery request seeks facially relevant information or when the proponent of the discovery has demonstrated relevance, the objecting party bears the burden to show that the requested discovery does not come within the scope of relevance as defined by Rule 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the presumption in favor of broad disclosure.[19]

In its opening brief, Ardent Mills argues that this discovery is relevant to its infringement contentions, pointing to its Third Supplemental Response to ADM's First Set of Interrogatories,

---

[14] Fed. R. Civ. P. 26(b)(1).

[15] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999); *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999)).

[16] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09–2656–KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[17] *Id*. (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[18] *Id.* at *7 (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[19] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

which make clear that Ardent Mills alleges ADM's intermediate products infringe upon the patents-in-suit. In its reply brief,[20] Ardent Mills further argues that its pleadings have always alleged infringement by "making" and "using" patented material. Ardent Mills points to the language appearing under its patent infringement claims: "ADM has been, and currently is, directly infringing the [patents-in-suit] by making, using, selling, offering for sale, white whole wheat products, including Kansas Diamond White Whole Wheat Flour."[21] Ardent Mills argues the preposition "including" indicates that Ardent Mills believes Kansas Diamond Flour is simply a part to be considered in the whole of ADM's infringing products. The court finds Ardent Mills has carried its burden to show the relevance of the requested discovery. The burden then shifts to ADM to support its relevance objection.

ADM argues the information is not relevant because Ardent Mills failed to specifically plead infringement by intermediate products, and therefore this is not a claim or defense in this case. ADM argues that "making . . . whole wheat products, including Kansas Diamond White Whole White Flour" does not include an infringement by intermediate products because this clause means that ADM infringes by making Kansas Diamond Flour, an end product. ADM also notes that the deadline has passed for amendments to the pleadings and goes on to argue that Ardent Mills could not satisfy the requirements to succeed on an untimely motion to amend the pleadings.

While ADM's position is not unreasonable in light of Ardent Mills' prior conduct in this litigation, the plain language of Ardent Mills' complaint is broad enough to encompass

---

[20] The court notes that arguments set forth for the first time in a reply brief are typically deemed waived. *See Coleman v. B-G Mgmt.*, 108 F.3d 1199, 1205 (10th Cir. 1997) (finding that issues not raised in the opening brief are deemed abandoned). However, any prejudice that may have resulted is mitigated by granting ADM's motion for leave to file a surreply. *See Mike*, 1996 WL 427761, at *2 (stating that it is appropriate to allow a surreply when there are new arguments or new evidence raised in the reply brief).

[21] Third Am. Compl. at ¶ 25, 30, 35, ECF. No. 176.

infringement-by-intermediate products. Ardent Mills has pled that ADM infringed on its patents-in-suit in a variety of ways, including through "making" and "using" whole wheat products that include Kansas Diamond Flour. Although ADM argues "whole wheat products" means whole wheat end products, the complaint simply does not specify whether it means end products, intermediate products, or any type of product created at any point during the process. The complaint conceivably covers infringement-by-intermediate products because it states ADM has infringed through "making" products. Because the complaint could be reasonably interpreted to include the allegation that ADM infringed on the patents-in-suit through creating intermediate products, the court finds the discovery requests seek relevant information. ADM's relevance objection is overruled.

**B. Judicial Estoppel Argument**

ADM next argues Ardent Mills' statements to the court in the context of claim construction proceedings should preclude any argument that intermediate products are relevant to the patent infringement claims under the doctrine of judicial estoppel. Judicial estoppel is a doctrine by which parties are prohibited from deliberately changing positions according to the exigencies of the moment.[22] The Tenth Circuit has directed that although there is no precise formula, the doctrine generally applies when:

> (1) a party takes a position clearly inconsistent with an earlier-taken position; (2) adopting the later, inconsistent, position would create an impression that either the earlier or the later court was misled; and (3) allowing the party to change their position would give them an unfair advantage.[23]

[22] *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008).

[23] *Vehicle Mkt. Research v. Mitchell Int'l*, 767 F.3d 987, 989 (10th Cir. 2014) (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011)).

The Tenth Circuit has also urged a "cautious application of the doctrine," noting that "there are often lesser weapons that can keep alleged inconsistent statements in check while preserving a party's option to have its day in court."[24]

Here, ADM relies on Ardent Mills' statements to the district judge in conjunction with the claim construction proceedings to argue that Ardent Mills' current position (infringement by intermediate products in addition to end products) is contrary to the position it took during claim construction proceedings. For example, Ardent Mills' opening claim construction brief states, "For purposes of clarity, the asserted patents in this litigation deal with the end flour *product*. Any processing aspects are wholly irrelevant to the asserted patents in this litigation."[25] Ardent Mills' counsel made similar statements during the claim construction hearing before the district judge.

ADM's judicial estoppel argument is more appropriately raised in the form of a separate dispositive motion directed at the district judge rather than as an argument raised in opposition to a motion to compel discovery. For one, the allegedly inconsistent statements at issue took place during claim construction proceedings before the district judge, who evaluated the claim construction briefs and presided over the hearing. This provides the district judge with more context to evaluate Ardent Mills' comments and whether they had any bearing on the district judge's claim construction ruling. Second, a finding that Ardent Mills should be judicially estopped from pursing its theory of infringement by intermediate products would be dispositive in nature and again, not appropriately ruled upon in the context of a motion to compel.[26] And

---

[24] *Id.*

[25] Pl.'s Opening *Markman* Br. at 10, ECF No. 55 (emphasis included in original).

[26] *See generally* 28 U.S.C. § 636; Fed. R. Civ. P. 72 (addressing the jurisdiction, powers, and types of pretrial orders magistrate judges may enter).

finally, when ruling on a motion to compel asserting what could broadly be defined as a relevance objection, it is the court's role to determine whether the requested discovery is relevant to the claims or defenses in the case, not to determine whether certain claims or defenses should be in the case at all.[27]

This finding is in line with this court's prior rulings regarding arguments raised in opposition to a motion to compel that go to whether a party should be allowed to pursue certain claims or defenses. In *Cotton v. Costo Wholesale Corp.*,[28] a defendant opposing a motion to compel argued that the plaintiff had not sufficiently pled a prayer for punitive damages, and therefore, the court should not allow discovery on this issue. The court rejected this argument, finding that the scope of discovery is that which is relevant to any party's claim or defense, as outlined in Rule 26(b). Because the defendant had not moved to dismiss the prayer for punitive damages, discovery on this issue was appropriate.[29] Because Ardent Mills' Third Amended Complaint is drafted broadly enough to encompass infringement by intermediate products and because the district judge has not made a ruling precluding Ardent Mills from pursuing this theory, discovery aimed at this theory is also appropriate.

**C. Undue Burden Objection**

ADM also objects to the inspection and sampling requests as unduly burdensome. To the extent ADM continues to assert an undue burden objection in response to Request Nos. 54 and 55, seeking samples, that objection is overruled because ADM fails to support it. Rather, ADM's

---

[27] *See Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (outlining the standard for considering a relevance objection and stating the requested discovery must be relevant to claims or defenses).

[28] No. 12-2731-JWL, 2013 WL 3819974, at *5 (D. Kan. July 24, 2013).

[29] *Id.* ("Usually, a motion to dismiss is a more appropriate vehicle to ask the court to address the sufficiency of a pleading than is a motion to compel.").

undue burden argument focuses on Request No. 56—Ardent Mills' request to be present at ADM's facilities when ADM is collecting the samples sought in Request Nos. 54 and 55.

Fed. R. Civ. P. 34(a)(2) governs the entry of a party onto another party's property for the purpose of conducting discovery. The subsection allows a party to serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."[30] It is within the court's discretion whether to permit entry under Rule 34(a)(2).[31]

"If the parties differ as to whether an inspection is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection."[32] The court has discretion to prohibit a discovery request under Rule 34(a)(2) if

> "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information ...; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."[33]

---

[30] Fed. R. Civ. P. 34(a)(2).

[31] *Lykins v. Certain Teed Corp.*, No. 11-2133-JTM-DJW, 2011 WL 6337631, at *5 (D. Kan. Dec. 19, 2011) (internal quotations omitted).

[32] *Id.* at *4 (quoting *Morris v. Cabelas*, No. 10-2559-EFM-GLR, 2011 WL 2516904, at *1 (D. Kan. June 23, 2011)); *see also* 8B Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2214 (3d ed. 2010) ("It has also been held that where entry on land is sought, the court must balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.").

[33] *McDonald v. Kellogg Co.*, No. 08-2473-JWL-JPO, 2011 WL 484191, at *2 (D. Kan. Feb. 7, 2011) (citing Fed. R. Civ. P. 26(b)(2)(C)); *see also* *Lykins*, 2011 WL 6337631, at *5 (setting forth the same standard on a request to permit entry); *N. Natural Gas Co. v. L.D. Drilling, Inc.*, Nos. 08-1405-WEB-DWB, 08-1400-WEB-DWB, 2010 WL 9519354, at *3-*4 (D. Kan. Mar. 26, 2010) (same).

Similarly, when considering an undue burden objection, the court considers whether the burden or expense of complying with a discovery request "is unreasonable in light of the benefits to be secured from discovery."[34] This imposes an obligation "to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."[35] Typically, this showing is made through an "affidavit or other evidentiary proof of the time or expense involved."[36]

ADM argues Request No. 56 would result in unnecessary cost because counsel would also need to be present for the inspections. The Declaration of ADM's vice president of technical services also states that ADM generally does not manufacture Kansas Diamond Flour on consecutive days, and it is not possible for ADM to reorganize its production schedule to do so because of ADM's storage constraints and the impact on product shelf life.[37] ADM surmises that carrying out these inspections would require up to five trips to Enid, Oklahoma and five trips to Buffalo, New York for its counsel. ADM also argues that allowing a competitor access to its production facilities would be highly disruptive to its operations.

The court weighs ADM's statement regarding the burden imposed against the benefits to be secured by allowing this discovery. Having ruled that discovery relevant to Ardent Mills' theory of infringement by intermediate products is appropriate at this juncture, it is clear that product-stream samples would be necessary to show whether ADM's intermediate products

---

[34] *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05–2164–MLB–DWB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007) (quoting *Cardenas v. Dorel Juvenile Grp.*, 232 F.R.D. 377, 380 (D. Kan. 2005)).

[35] *G.D. v. Monarch Plastic Surgery*, No. 06-2184-CM, 2007 WL 201150, at *2 (D. Kan. Jan. 22, 2007) (quoting *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. May 30, 2002)).

[36] *Sonnino*, 220 F.R.D. at 653 (citing *Bradley v. Val–Mejias*, No. 00–2395–GTV, 2001 WL 1249339 at *6 n.4 (D. Kan. Oct. 9, 2001)).

[37] Decl. of Nicholas Weigel in Supp. of Archer-Daniels-Midland's Opp'n to Ardent Mills LLC's Mot. to Compel Disc., ECF No. 187-1.

infringe on the patents-in-suit. That said, Ardent Mills has failed to explain why it must be present for the collection of the requested samples. Alternatively, Ardent Mills has offered to have an independent expert present for the sampling so that the attorneys need not appear. However, Ardent Mills has not presented information suggesting ADM cannot be trusted to collect its own samples, or that gathering the samples is such a sensitive operation that it would require oversight. Rule 34(a)(2) contemplates entry onto a premises to inspect or sample the designated object on the property, not necessarily to oversee the other party's collection of samples.[38] Under certain circumstances, it may be appropriate to allow a party this type of oversight, but the present briefing demonstrates the burden to ADM outweighs the benefits to be secured by the requested discovery. ADM's undue burden objection is sustained as Request No. 56.

For the reasons stated herein, Ardent Mills' motion to compel is granted in part and denied in part. Within twenty-one (21) calendar days from the date of this order ADM shall fully respond to Request Nos. 54 and 55. Pursuant to the parties' meet-and-confer sessions, Ardent Mills no longer requests product stream samples in response to Request No. 54 subparts (g), (h), (o), and (p).[39] The parties shall bear their own fees and expenses incurred as a result of the briefing on this motion.[40]

Accordingly,

---

[38] *Compare with Lykins*, 2011 WL 6337631, at *4 (where the party moving to compel sought to conduct its own inspection of the other party's premises); *N. Natural Gas Co.*, 2010 WL 9519354 at *2 (where the party moving to compel sought to conduct its own inspection of wells on the other party's premises).

[39] Mem. in Supp. of Ardent Mills' Mot. to Compel Discover at 4 n.2, ECF No. 185.

[40] *See* Fed. R. Civ. P. 37(a)(5)(C) (providing the court with discretion whether to award fees and expenses when a motion to compel is granted in part and denied in part).

**IT IS THEREFORE ORDERED** that Plaintiff Ardent Mills' Motion to Compel Discovery (ECF No. 184) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that ADM's Motion for Leave to File Surreply in Opposition to Ardent Mills' Motion to Compel Discovery (ECF No. 201) is granted insofar as the court has considered the brief in reaching a determination on the motion to compel.

**IT IS SO ORDERED.**

Dated this 17th day of December, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge